UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X

                    **ECF CASE**

JOSEPH A. PISANI,               :

                        05 Civ. 7113 (WCC)

             Plaintiff,    :

     - against -          :       **OPINION**
                                 **<u>AND ORDER</u>**

WESTCHESTER COUNTY HEALTH CARE    :
CORPORATION, RICHARD BERMAN,
individually, and KARA BENNORTH    :
individually,

                        :

            Defendants.

                        :
- - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

LOVETT & GOULD
**Attorneys for Plaintiff**
222 Bloomingdale Road
White Plains, New York  10605-1513

JANE BILUS GOULD, ESQ.
JONATHAN LOVETT, ESQ.

    Of Counsel


WILSON, ELSER, MOSKOWITZ, EDELMAN
  & DICKER LLP
**Attorneys for Defendants**
Three Gannett Drive
White Plains, New York 10604

JOANNA M. TOPPING, ESQ.
ALLYSON AVILA, ESQ.

    Of Counsel

**Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Plaintiff Joseph A. Pisani brings this § 1983, New York State defamation law and breach of contract action against defendants Westchester County Health Care Corporation ("WHCC"), WHCC Chairman Richard Berman in his individual capacity and WHCC Assistant Vice President Kara Bennorth in her individual capacity (collectively, "defendants") for wrongful termination. Presently before the Court are defendants' motion to dismiss the § 1983 and state law defamation claims pursuant to FED. R. CIV. P. 12(b)(6) and the parties' cross-motions for partial summary judgment on plaintiff's breach of contract claim pursuant to FED. R. CIV. P. 56(c).[1] For the reasons stated below, defendants' motion to dismiss is granted, but both parties' motions for partial summary judgment are denied.

## BACKGROUND

Pisani served as Executive Vice President of WHCC, a public benefit corporation charged with operating various medical facilities, from January 15, 2004 until his termination on May 18, 2005. (Am. Complt. ¶¶ 4, 7, 13.) Pisani previously had served as Executive Vice President of Staten Island University Hospital ("SIUH") from 1994 until his apparently voluntary departure in August 2000. (Topping Decl., Ex. B ¶ 8; Pl. Rule 56.1 Resp. ¶ 7.) On May 18, 2005, the New York State Attorney General's Office issued via its website a press release announcing a settlement between New York State and SIUH regarding allegations of Medicaid fraud dating back to 1999 for which SIUH was to pay $76.5 million. (Am. Complt. ¶ 8; Topping Decl., Ex. A-1 at 1.) The press release contained a written apology, which provided in pertinent part: "It causes SIUH's Trustees and

---

[1] This Court has jurisdiction under both 28 U.S.C. §§ 1331 and 1332(a)(1).

current Executives much pain to come before our community in these circumstances. We deeply regret and are embarrassed by the misconduct carried out by former executives of the Hospital that led to this settlement." (Am. Complt. ¶¶ 8, 9; Topping Decl., Ex. A-1 at 3.)

The press release also contained a hyperlink to the civil complaint. The complaint named only SIUH and CHAPS Community Health Services, Inc. as defendants. (Am. Complt. ¶ 10.) Pisani is not named as a defendant, and his name appears in only four of 59 paragraphs.[2] (Topping Decl.,

---

[2] The relevant paragraphs read:

8.      From 1989 to July 2000, the President and Chief Executive Officer of SIUH was Americo "Rick" Varone. Joseph Pisani was Executive Vice President of SIUH until the end of 2000. James Walsh was an employee of SIUH later designated as Executive Director of CHAPS, and Alfred Glover was Senior Vice President of SIUH. Numerous other SIUH officers and employees also had knowledge of the violations described in this Complaint.

. . . .

22.      The next month, an SIUH audit (sent to, among others, Glover and Varone) showed that another clinic was operating "approximately **84 hours per month**." (Bold in original.) A report dated March 18, 1999, which was forwarded to CEO Varone and Executive Vice President Pisani, stated that each of the Levit clinics described in the report was operating in violation of the part-time clinic regulations.

23.      At the same time these reports were coming in, outside counsel was giving additional advice to SIUH. In March 1999, a lawyer wrote a memorandum to files to memorialize a conversation with Joseph Pisani, then Executive Vice President of SIUH. The lawyer reported learning that a clinic was operating on a full-time basis and calling Pisani to tell him he had to "roll back the hours" of the clinic. The memorandum stated that, if he did not, "he jeopardizes all Medicaid billings of the [clinic]." Pisani's response was recorded: "He told me that he would not do because he could not operate an UrgiCenter on a part-time basis even though that's what it legally is." The clinic continued to operate B and bill Medicaid B in violation of the regulations.

. . . .

26.      That memo came to CEO Varone on May 18, 1999, with a copy to

Ex. B.)  Pisani asserts that the complaint's allegations, to the extent they relate to his conduct, are false and capable of being proven so, and that at no time did he engage in Medicaid fraud.  (Am. Complt. ¶¶ 11, 12.)

The same day as the press announcement, WHCC terminated Pisani.  Berman, WHCC's President, issued the following statement in conjunction with Pisani's termination:

> In light of today's disclosures by the Attorney General's office, today Westchester Medical Center terminated Joseph Pisani as Executive Vice President and Chief Administrative Officer.  We have no knowledge of any issues concerning Mr. Pisani's tenure at Westchester County Medical Center.  At present time, we have no reason to believe that any additional review is needed.

(*Id.* ¶ 14.)  In addition, the statement included the following comment about the Attorney General's investigation of SIUH:  "We had no knowledge of any details of Mr. Pisani's involvement." (Topping Decl., Ex. C.)  Plaintiff alleges that this statement "intentionally adopted" the "defamatory utterances" of the Attorney General and SIUH as published in the press release and complaint.  (Am. Complt. ¶ 14.)  Plaintiff further alleges that this statement was repeatedly published in various newspapers along with additional statements by Berman and Bennorth of a similar nature, including a statement attributed to Bennorth that Pisani would receive no exit payment despite contractual provisions requiring one if Pisani is terminated for specified reasons.  (*Id.* ¶ 16.)

---

Executive Vice President Pisani.  In a cover memo, one of SIUH's Vice Presidents stated that she agreed with the recommendation to "close or reduce the sites' hours to fifteen until the items on the list are corrected. . . . I do not believe that the structural adjustments can be made unless the sites are closed or the hours reduced to allow time for construction."  Despite acknowledging this warning, and purporting to approve changes to the operations of the clinics, Varone and Pisani in fact did nothing to prevent the clinics from operating in excess of the part-time clinic regulations.

(Topping Decl., Ex. B ¶¶ 8, 22, 23, 26 (modification in original).)

Pisani's employment at WHCC was subject to a personal services agreement (the "Agreement") containing a termination clause whereby Pisani could be terminated either with or without cause, the latter entitling Pisani to an exit payment.[3] (*Id.* ¶ 7.) Pisani alleges he was fired without cause and therefore is entitled to an exit payment in the amount of $480,000. (*Id.* ¶¶ 17-19, 26.) In support of that conclusion, plaintiff alleges that the termination letter contained no statement regarding the reason for his termination. (Pl. Rule 56.1 Stmt. ¶ 8; Gould Decl., Ex. 4.) Defendants, however, assert that plaintiff was fired for having committed an act of moral turpitude, thereby jeopardizing the public's trust and confidence. (Defs. Mem. Supp. Partial Summ. J. at 6.)

## DISCUSSION

### I. <u>Motion to Dismiss</u>

#### A. <u>Standard of Review</u>

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984). A court's task in determining the sufficiency of a complaint is "necessarily a limited one." *Id.* A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir. 1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)). Generally,

---

[3] The Agreement defines "cause" as: "(i) a determination by the Board of Directors of the Employer of Employee's personal dishonesty, incompetency, gross negligence, willful misconduct, breach of fiduciary duty or intentional failure to perform stated or assigned duties; (ii) commission by Employee of a criminal act or act of moral turpitude whether or not in connection with his duties hereunder . . . ." (Am. Complt. ¶ 7.)

"[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed. 1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995).

"In assessing the legal sufficiency of a claim, the Court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference." *John v. N.Y.C. Dep't of Corrs.*, 183 F. Supp. 2d 619, 627 (S.D.N.Y. 2002) (Conner, J.) (internal citations omitted). On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.).

### B.      Defamation Under New York State Law

"The gravamen of an action alleging defamation is an injury to reputation. The New York Court of Appeals has defined a defamatory statement as one that exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'" *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (quoting *Kimmerle v. N.Y. Evening Journal*, 262 N.Y. 99, 102, 186 N.E. 217, 218 (1933)); *see also* Robert D. Sack, SACK ON DEFAMATION § 2.4.1 (3d ed. 2005).

In resolving a defamation claim, a court typically must determine whether the plaintiff is a public or private figure and whether the matter is a public or private concern. *See Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001). Here, the parties dispute whether Pisani is a public or private figure, though they are in apparent agreement that the matter is one of public concern. The Court, however, need not decide this issue as we find the allegedly defamatory statement is substantially true.

Under New York law a plaintiff must establish five elements to recover for libel: (1) a written defamatory statement concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability. *See Celle*, 209 F.3d at 176 (collecting cases). Truth is an absolute defense to a defamation claim. *See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 28 (2d Cir. 1995). "Indeed, falsity is the *sine qua non* of an action for defamation." *Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2004 WL 2339759, at *11 (S.D.N.Y. Oct. 15, 2004); *see also Ingber v. Lagarenne*, 299 A.D.2d 608, 609, 750 N.Y.S.2d 172, 174 (3d Dep't 2002) ("As a defense, truth need not be established to an extreme literal degree. Provided that the defamatory material on which the action is based is substantially true (minor inaccuracies are acceptable), the claim to recover damages . . . must fail.").

Plaintiff asserts that Berman's statement "necessarily incorporates, indeed adopts the Attorney General's complaint—and far worse, other disclosures including the accompanying statement of SIUH . . . ." (Pl. Mem. Opp. Mot. Dismiss at 12.) For that reason, plaintiff argues, Berman's statement is false because the Attorney General's complaint contains untruthful allegations concerning plaintiff. Defendants contend that their statements are simply straightforward

pronouncements of their termination of plaintiff and their refusal to grant him a exit payment. (Defs. Mem. Supp. Mot. Dismiss at 8-9.)

Their statements did not constitute republication of the Attorney General's allegations or SIUH's apology because they merely referred to the Attorney General's "disclosures" without restating them or commenting upon their veracity and make no mention of SIUH's apology. (Defs. Reply Mem. Supp. Mot. Dismiss at 8.) Defendants made only statements of unchallenged truth regarding plaintiff's status at WHCC, to wit, that he was terminated in light of the Attorney General's disclosures. *Cf. Sacco v. Pataki*, 114 F. Supp. 2d 264, 270 (S.D.N.Y. 2000) ("The Second Circuit has recognized the importance of not discouraging government officials from publicly explaining their personnel decisions."). Indeed, plaintiff all but concedes the inherent truth of these statements (Pl. Mem. Opp. Mot. Dismiss at 12), forcing plaintiff to claim defamation by adoption/republication. We are not convinced that WHCC's innocuous statement constitutes an "adoption" or a "republishing" of either the Attorney General's complaint or SIUH's apology. The statement only refers to the complaint and apology; it does not repeat the language. Nor can the phrase "in light of today's disclosures" reasonably be interpreted as taking a position on or expressing a belief as to the veracity of the disclosures. At most it appears that defendants' statement merely stated that Pisani was discharged because of public announcement of charges against Pisani's former employer. In addition, Bennorth's statement regarding WHCC's refusal to issue Pisani an exit payment is a true statement. To date, WHCC has not awarded Pisani an exit payment, prompting his breach of contract action for their alleged refusal to honor the contract. Based on the statements made and the information presented in the Complaint, plaintiff has overreached in

attempting to catch WHCC in the net of its ongoing, parallel defamation action against SIUH.[4]

Even if capable of being proven false, we are doubtful that defendants' statements are susceptible of defamatory intent. "'Whether particular words are defamatory presents a legal question to be resolved by the courts in the first instance.'" *Aronson v. Wiersma*, 65 N.Y.2d 592, 593-94, 483 N.E.2d 1138, 1139, 493 N.Y.S.2d 1006, 1007 (1985). However, if "the words can be construed as having more than one meaning, only some of which are potentially defamatory, it is for a jury to select among those meanings . . . ." *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005). In making its initial determination, a court must "'give the disputed language a fair reading in the context of the publication as a whole,'" should not strain "'to interpret such writings in their mildest and most inoffensive sense to hold them nonlibelous'" and should not construe words "'with the close precision expected from lawyers and judges[,] but as they would be read and understood by the public to which they are addressed.'" *Id.* at 114 (quoting *Celle*, 209 F.3d at 177 (internal quotations and citations omitted)).

It is significant that defendants stated that Pisani was terminated "in light of today's *disclosures*" not because of allegations or charges against him. Indeed, plaintiff's attorneys argue that "Pisani was never charged, there is no allegation that he committed fraud or misconduct, and it is clear in reading the complaint that most acts complained of occurred after he left." (Pl. Mem. Opp. Mot. Dismiss at 17.) Moreover, the statement not only disclaims any concerns over Pisani's actions at WHCC, but also represents that WHCC "had no knowledge of any details of Mr. Pisani's involvement" regarding his tenure at SIUH. *Cf. Houghton v. Cardone*, 295 F. Supp. 2d 268, 274

---

[4] That action was transferred to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a) by Opinion and Order of this Court dated February 27, 2006 pursuant to the parties' consent to change of venue.

(W.D.N.Y. 2003) ("It is debatable whether this even states a defamation claim under state law, since plaintiff does not expressly allege that defendants made a false statement about him; if all that defendants did was report the fact of plaintiff's arrest, and that he was alleged to have committed a crime, that would not be defamatory.").  One news report referenced in plaintiff's Complaint stated that a WHCC spokesman "would not elaborate on whether the board members dismissed Pisani based on any additional information or previous suspicions," (Am. Complt. ¶ 16.e.), precisely because, as the statement plainly says, defendants had no knowledge concerning Pisani's actions at SIUH.

Plaintiff has not alleged defamation by implication, which involves "false suggestions, impressions and implications arising from otherwise truthful statements." *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 381, 649 N.E.2d 825, 829, 625 N.Y.S.2d, 477, 481 (1995).  Nor do we find it possible to attach a defamatory implication to a simple and truthful statement of termination.  Plaintiff asks this Court to pile inference upon inference in finding that defendants' statements implicate Pisani in fraudulent behavior because of their reference to the Attorney General's announcement of the settlement of a civil action for Medicare fraud against SIUH and because of SIUH's apology for the actions of unnamed "former executives," despite the fact that plaintiff was not named as a defendant in that action—and, indeed, states that he had left SIUH's employ before most of the allegedly fraudulent events took place—and despite defendants' express disavowal of knowledge of plaintiff's involvement in any improprieties at SIUH.  The inferences urged by plaintiff are clearly unwarranted; there was no falsity, express or implied.  Plaintiff's state law defamation action is therefore dismissed with prejudice.

## C.    Section 1983

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) "that some person has deprived him of a federal right" and (2) "that the person who has deprived him of that right acted under color of state . . . law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citing *Monroe v. Pape*, 365 U.S. 167, 171 (1961)). Defendants do not dispute that WHCC and executives Berman and Bennorth are state actors for purposes of this suit. To the contrary, defendants argue plaintiff is a public figure because of the quasi-governmental nature of WHCC. (Defs. Mem. Supp. Mot. Dismiss at 16; Defs. Reply Mem. Supp. Mot. Dismiss at 1-4); *see Majer v. Metro. Trans. Auth.*, No. 90 Civ. 4608, 1990 WL 212928, at *3 (S.D.N.Y. Dec. 14, 1990) (finding transportation authority, organized as public benefit corporation, a state actor for purposes of § 1983); *see also* N.Y. Pub. Auth. Law § 1261(13) ("'State Agency' shall mean any . . . public benefit corporation . . . of the state.").

Plaintiff alleges that WHCC's actions deprived him of a liberty interest in violation of his Fourteenth Amendment rights.[5]  To state a valid claim for such an injury, the plaintiff must assert:

---

[5] Plaintiff clearly had no property interest in his employment at WHCC. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Thus, an at-will employee does not have a protected property interest in his or her continued employment. *See Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) ("Employees at will have no protectable property interest in their continued employment"). While a protectable property interest "may arise in a situation where an employee may be removed only for cause," *Straker v. Metro. Transit Auth.*, 333 F. Supp. 2d 91, 96 (E.D.N.Y. 2004), that is not the situation here, where plaintiff could be removed either with or without cause.

Moreover, we note that plaintiff made no counterargument to defendants' contention that no property interest exists. Accordingly, this claim is abandoned. *See, e.g.*, *Singleton v. City of Newburgh*, 1 F. Supp. 2d 306, 312 (S.D.N.Y. 1998) (Conner, J.) (deeming plaintiff's claim "abandoned" and granting defendants' summary judgment where claim was alleged in the complaint but "not raised elsewhere in the record"); *see also Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997).

(1) that he possesses a cognizable liberty interest; and (2) that the defendants deprived him of that liberty without providing process adequate to justify their actions.[6] *See, e.g.*, *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005); *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003). Plaintiff alleges that by adopting the defamatory Attorney General complaint and SIUH apology, WHCC stigmatized him before terminating him from his government post without giving him an opportunity to refute the allegations of fraud allegedly leveled against him by the Attorney General and SIUH.

This claim, known as a "stigma-plus" claim, *see Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005), requires plaintiff to meet the "stigma-plus" standard, which demands that plaintiff establish that: (1) he was defamed; and (2) the defamation occurred in the course of the termination of governmental employment or was coupled with a deprivation of a legal right or status. *See, e.g.*, *Abramson*, 278 F.3d at 101; *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 177 (2d Cir. 1991). Establishing defamation in the § 1983 context is no different than under New York State law: it requires plaintiff prove "(1) the utterance of a statement about [him] that is injurious to [his] reputation, 'that is capable of being proved false, and that he or she claims is false,' and (2) 'some tangible and material state-imposed burden . . . in addition to the stigmatizing statement.'" *Velez*, 401 F.3d at 87 (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds*, *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003)). In addition to falsity, the statements "must denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that

---

[6] We note that plaintiff has not brought a similar federal action against SIUH, presumably because plaintiff recognized the disconnect between SIUH's alleged defamation and his termination from WHCC. *See Duran v. City of New York*, No. 96 Civ. 4219, 1998 WL 603212, at *4 (S.D.N.Y. Sept. 11, 1998); *see also Aversa v. United States*, 99 F.3d 1200, 1216 (1st Cir. 1996).

employee's continued ability to practice [his] profession." *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-31 (2d Cir. 1996) (citation omitted).

Because we have already found defendants' statements substantially true and thus not capable of being proved false, plaintiff's liberty interest claim also fails. While "charges of dishonesty, immorality or illegality are statements beyond plaintiff's power to correct and are necessary plus factors establishing stigmatization," *LaForgia v. Davis*, No. 01 Civ. 7599, 2004 WL 2884524, at *7 (S.D.N.Y. Dec. 14, 2004), defendants made no such charges here and did not adopt nor republish the allegedly defamatory statements of others. Defendants' statements did not imply or suggest that plaintiff was involved in any allegedly fraudulent activity. *Cf. Kelly Kare*, 930 F.2d at 177 ("We cannot agree that the innuendo—if any—that stems from a without-cause termination is tantamount to a false accusation by defendants."). Accordingly, plaintiff's § 1983 action is dismissed with prejudice.

## II.    **Cross-Motions for Partial Summary Judgment**

### A.    **Standard of Review**

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50 (1986). A fact is material only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Anderson*, 477 U.S. at 248. The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against

the movant.  *See Anderson*, 477 U.S. at 255.  To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist.  *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### B.  Breach of Contract Claim

Under New York law, to recover for breach of contract a plaintiff bears the burden of proving by a preponderance of the evidence:  (1) the existence of an enforceable contract; (2) performance by one party; (3) breach by the other party; and (4) damages.  *See Harsco Corp. v. Sequi*, 91 F.3d 337, 348 (2d Cir. 1996) (citing *Tagare v. NYNEX Network Sys. Co.*, 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996) (Conner, J.)).  Accordingly, on summary judgment, plaintiff must demonstrate that, as a matter of law, defendants lacked "cause" to dismiss him and, by failing to give him the exit payment called for in his employment agreement, breached that agreement.

For defendants to prevail on their cross-motion for summary judgment defendants must establish that as a matter of law, there was cause for plaintiff's termination.  Under New York law, "[a]n employer has the right to terminate employment at any time and for any reason or no reason at all, except as that right may have been limited by express agreement with the employee." *Capuano v. Island Computer Prods., Inc.*, 382 F. Supp. 2d 326, 327 (D. Conn. 2005) (citing *O'Connor v. Eastman Kodak Co.*, 65 N.Y.2d 724, 725, 481 N.E.2d 549, 492 N.Y.S.2d 9 (1985)). Pisani's contract with WHCC allowed termination with or without cause, the latter entitling Pisani

to an exit payment in an amount determined according to a calculation specified in the employment contract. Of course, WHCC owes Pisani nothing if he was fired "for cause," as defined in the employment contract. (*See supra* n.3.)

The parties rightly agree that fraud can constitute moral turpitude as understood under the terms of the employment contract. (Defs. Mem. Supp. Partial Summ. J. at 7; Pl. Mem. Supp. Partial Summ. J. at 8); *see also Jordan v. De George*, 341 U.S. 223 (1951) ("The phrase 'crime involving moral turpitude' has without exception been construed to embrace fraudulent conduct."); *Durham Indus. Inc., v. N. River Ins. Co*., 673 F.2d 37, 41 (2d Cir. 1982) (noting that under New York law, fraud evincing moral turpitude has been described as "demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligation'" (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 405, 179 N.E.2d 497, 499, 223 N.Y.S.2d 488, 491 (1961))). However, they seriously dispute whether Pisani committed fraud.

As previously noted, Pisani was not named as a defendant in the Attorney General's action against SIUH. The termination clause allows WHCC to fire Pisani for cause as a result of the "*commission* by Employee of a criminal act or act of moral turpitude" whether or not in connection with his duties hereunder, (Lovett Decl., Ex. 3 (emphasis added)), not merely unsubstantiated allegations. Therefore, whether Pisani's termination was a breach of contract depends on whether Pisani committed fraud while employed at SIUH. Neither party has submitted any evidence sufficient to permit the Court to make this determination as a matter of law. Consequently, whether there was cause for termination is a substantial issue of material fact that precludes an award of summary judgment to either party.

## CONCLUSION

For all of the foregoing reasons, the motion under FED. R. CIV. P. 12(b)(6) to dismiss the 42 U.S.C. § 1983 and New York State law defamation claims against defendants Westchester County Health Care Corporation ("WHCC"), WHCC Chairman Richard Berman and WHCC Assistant Vice President Kara Bennorth is granted with prejudice. The parties' cross-motions for summary judgment pursuant to FED. R. CIV. P. 56(c) regarding the New York State law breach of contract claim are denied.


SO ORDERED.

Dated: White Plains, New York
March 31, 2006


_William C. Conner_
Sr. United States District Judge