```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
                                           :      ECF CASE
JOSEPH A. PISANI,                          :
                                                  05 Civ. 7113 (WCC)
                 Plaintiff,                :

        - against -                        :      OPINION
                                                  AND ORDER
WESTCHESTER COUNTY HEALTH CARE             :
CORPORATION, RICHARD BERMAN,
individually, and KARA BENNORTH            :
individually,
                                           :
                 Defendants.
                                           :
- - - - - - - - - - - - - - - - - - - - - X


A P P E A R A N C E S :

                                    LOVETT & GOULD
                                    **Attorneys for Plaintiff**
                                    222 Bloomingdale Road
                                    White Plains, New York  10605-1513

JANE BILUS GOULD, ESQ.
        Of Counsel


                                    CHARLENE M. INDELICATO
                                    WESTCHESTER COUNTY ATTORNEY
                                    **Attorney for Deputy County Executive**
                                        **Lawrence S. Schwartz**
                                    600 Michaelian Office Building
                                    148 Martine Avenue
                                    White Plains, New York  10601

LORI A. ALESIO,
    Deputy County Attorney

        Of Counsel




                                    **Copies E-Mailed to Counsel of Record**
```

**CONNER, Senior D.J.:**

Plaintiff Joseph Pisani brings this breach of contract action against defendants Westchester County Health Care Corporation ("WCHCC"), Richard Berman, Chairman of WCHCC's Board of Directors, and Kara Bennorth, WCHCC's Assistant Vice President for Marketing and Strategic Development, following the termination of his employment in May 2005.[1] Presently before the Court is the motion of non-party Westchester County Deputy County Executive Lawrence S. Schwartz to quash a subpoena issued by plaintiff for Schwartz's deposition testimony regarding the events surrounding the termination of plaintiff's employment. For the following reasons, the motion is denied.

**BACKGROUND**

Plaintiff served as Executive Vice President of WCHCC, a public benefit corporation charged with operating various medical facilities, from January 15, 2004 until the termination of his employment on May 18, 2005. (Am. Complt. ¶¶ 4, 7, 13.) Prior to working at WCHCC, plaintiff served as Executive Vice President of Staten Island University Hospital ("SIUH") from 1994 until August 2000, at which time he apparently departed voluntarily. (Topping Decl., Ex. B ¶ 8; Pl. Rule 56.1 Stmt. Resp. ¶ 7.) On May 18, 2005, the New York State Attorney General's Office issued, via its website, a press release announcing a settlement between New York State and SIUH regarding allegations of Medicaid fraud dating back to 1999, for which SIUH was to pay the state $76.5

---

[1] Plaintiff originally also sought damages under 42 U.S.C. § 1983 and New York State defamation law. On March 31, 2006, however, we dismissed his § 1983 and defamation claims pursuant to FED. R. CIV. P. 12(b)(6). *See Pisani v. Westchester County Health Care Corp.*, 424 F. Supp. 2d 710 (S.D.N.Y. 2006) (Conner, J.).

1

million. (Am. Complt. ¶ 8; Topping Decl., Ex. A-1 ¶ 1.) The press release contained a written apology, which provided in pertinent part: "It causes SIUH's Trustees and current Executives much pain to come before our community in these circumstances. We deeply regret and are embarrassed by the misconduct carried out by former executives of the Hospital that led to this settlement." (Am. Complt. ¶¶ 8-9; Topping Decl., Ex. A-1 ¶ 3.)

On the day that the press release was issued, WCHCC terminated plaintiff's employment, citing unspecified misconduct as the reason for its termination. Pursuant to the terms of plaintiff's employment contract, WCHCC could terminate plaintiff's employment with or without cause, but, if it terminated him without cause, plaintiff would be entitled to an exit payment of $480,000. Although plaintiff was not named as a defendant in the SIUH action, his name appears in four of the fifty-nine paragraphs of the SIUH complaint. (Topping Decl., Ex. B.) Nevertheless, plaintiff asserts he has never been involved in medicaid fraud or any other wrongdoing. (Am. Complt. ¶¶ 11-12.)

In connection with the present action, plaintiff subpoenaed Schwartz for a deposition, pursuant to FED. R. CIV. P. 45, on the basis of his alleged direct participation in the decision to terminate plaintiff's employment. (Pl. Mem. Opp. Mot. Quash at 2-5.) Schwartz objects, contending, through counsel,[2] that he has no knowledge of the terms of plaintiff's employment or the circumstances surrounding its termination. (Schwartz Mem. Supp. Mot. Quash at 1-3.) Moreover, Schwartz contends that his status as a "high-level government official" insulates him from being deposed. (*Id.*)

---

[2] As set forth subsequently in greater detail, Schwartz himself has not submitted an affidavit detailing his knowledge of the facts at issue.

**DISCUSSION**

Generally, "[a] party may take the testimony of any person, including a party, by deposition upon oral examination without leave of court . . . . The attendance of witnesses may be compelled by subpoena as provided in Rule 45." FED. R. CIV. P. 30. This generally broad access to witnesses during the discovery process is limited however, by FED. R. CIV. P. 26(c) (providing for the issuance of a protective order to avoid an "undue burden" on the deponent) and FED. R. CIV. P. 45(c) ("On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . subjects a person to undue burden."). Although courts are loath to preclude parties from deposing prospective witnesses, special considerations arise when a party attempts to depose a high level government official.[3] *See Marisola A. v. Giuliani*, No. 95 Civ. 10533, 1998 U.S. Dist. Lexis 3719, *7 (S.D.N.Y. Mar. 23, 1998).

Although there is little precedent on the issue, courts of this circuit generally allow the deposition of high level government officials only if two conditions are met: "(1) the deposition is necessary in order to obtain relevant information that cannot be obtained from any other source; and (2) the deposition would not significantly interfere with the ability of the official to perform his governmental duties." *Marisol A.*, 1998 U.S. Dist. LEXIS 3719 at *7; *see also Martin v. Valley Nat'l Bank of Ariz.*, 140 F.R.D. 291, 314 (S.D.N.Y. 1991) ("[D]epositions of senior officials should be allowed if they possess particular information necessary to the development or maintenance of

---

[3] Although a question exists as to Schwartz's status as a high level government official, *cf. New York v. Oneida Indian Nation of N.Y.*, No. 95-CV-0554, 2001 U.S. Dist. LEXIS 21616, *11-14 (N.D.N.Y. Nov. 9, 2001) (special counsel to the governor of the State of New York not high level government official), plaintiff does not contest Schwartz's characterization as such, and we need not address it. Rather, the Court will assume, for the purposes of the present motion, that the office of Deputy County Executive constitutes a high level government position entitled to special protection.

the party's case which would not otherwise be reasonably obtainable.") (internal quotation marks omitted). "The purpose of this rule is not only to leave officials free to conduct government business . . . but also to protect the mental processes of executive and administrative officers in order promote open channels of communication within government." *L.D. Leasing Corp., Inc., v. Crimaldi*, No. 91-CV-2430, 1992 U.S. Dist. LEXIS 18683, *3 (E.D.N.Y. Dec. 1, 1992) (citations omitted).

"The essential considerations on whether a high-ranking official will be deposed are the availability of this information through alternative sources and the official having unique personal knowledge that cannot be obtained elsewhere or through others." *Oneida Indian Nation*, 2001 U.S. Dist. LEXIS 21616 at *9. Put differently, "a party may only obtain the deposition of a high level official by showing that [the] official has particularized first-hand knowledge that cannot be obtained from any other source." *Id.* (internal quotation marks omitted). Nevertheless, it is, of course, axiomatic that "[m]otions to compel and motions to quash a subpoena are both entrusted to the sound discretion of the district court." *In re Fitch, Inc.,* 330 F.3d 104, 108 (2d Cir. 2003) (internal quotation marks omitted).

We first address whether Schwartz possesses relevant information that cannot be obtained from another source. Curiously, he has not submitted an affidavit as to his involvement or non-involvement in the termination of Pisani's employment, *cf. Toussie v. County of Suffolk*, No. 05-1814, 2006 U.S. Dist. LEXIS 47511, *4 (E.D.N.Y. July 13, 2006) (county executive submitted sworn affidavit stating that he had no personal knowledge of circumstances giving rise to case), and we cannot, based solely on a statement from his attorney, find that Schwartz possesses no knowledge of the termination. *See United States v. Barrios*, No. 97-1364, 2000 U.S. App. LEXIS 7133, *2-3 (2d Cir. Apr. 18, 2000) ("In the present case, the record does not reveal a submission to the district

court of any affidavit from a person who had such personal knowledge. The affidavit submitted by [the defendant's] attorney was not made on personal knowledge.") (citations omitted; internal quotation marks omitted); *United States v. Maldonado-Rivera*, 922 F.2d 934, 972 (2d Cir. 1990) ("[trial] court properly declined to credit the attorney's affidavit because it was not based on the attorney's personal knowledge . . . ."); *United States v. Gillette*, 383 F.2d 843, 848-49 (2d Cir. 1967) (holding that statement submitted by attorney did not raise issue of fact because it did not allege personal knowledge on the part of the attorney).

Indeed, the evidence supplied by persons with personal knowledge regarding Pisani's termination suggests that Schwartz *does* possess relevant information that cannot be obtained from any other source. Defendant Berman stated in his deposition that he spoke extensively with Schwartz on the day that plaintiff's employment was terminated. (Berman Dep. at 17-19.) These conversations related directly to plaintiff's involvement in the misconduct mentioned in the press release, and Berman stated that he and Schwartz specifically discussed at length what to do about plaintiff, including whether to terminate his employment. (*Id.* at 41) ("Well, in our discussion back and forth he wanted to know what I was thinking about doing about [plaintiff's employment], including one of the options could have been terminating, suspending, doing nothing, et cetera.").

As stated previously, the principal issue in the present case implicates WCHCC's reasons for terminating plaintiff's employment. Plainly, Berman's statement indicates that Schwartz personally considered how to address the SIUH press release and whether to terminate plaintiff's employment. Accordingly, the first prong of the test, that the information cannot be gleaned from another source, is satisfied because of Schwartz's personal, and apparently significant, involvement in the termination of plaintiff's employment.

We now turn to the second prong of the test.  No evidence suggests that Schwartz's appearance for a deposition would "*significantly* interfere with [his] ability to perform his governmental duties."  *Marisol A.*, 1998 U.S. Dist. LEXIS 3719 at *7 (emphasis added).  Plaintiff has represented to the Court that the deposition would be conducted at Schwartz's own office and will be of short duration.[4]  (Pl. Mem. Opp. Mot. Quash at 8.)  Although any deposition will likely cause some interference with the performance of one's job, Schwartz has cited no examples of how his duties would be *significantly* infringed if he were required to undergo a brief deposition at his own offices, and the Court can discern none.

Furthermore, Schwartz's reliance on *Marisol A.* and *L.D. Leasing Corp.* is misplaced.  In both cases, the prospective deponents, sitting New York City mayors, had no personal knowledge of the particular facts at issue.  *Marisol A.*, 1998 U.S. Dist. LEXIS 3719, *14-15 ("[T]he Mayor clearly states in his affidavit that he does not have first-hand knowledge of the factual affairs of [The New York City Administration for Children's Services] . . . ."); *L.D. Leasing Corp.*, 1992 U.S. Dist. LEXIS 18683, *3-4 ("In this case, plaintiffs concede that the Mayor has no first-hand knowledge relating to the seizure of the buses at issue.").  Indeed, those cases merely reaffirm the sound policy behind the heightened standard for deposing high level government officials: the reluctance of the federal courts to invade the mental processes of important members of the other branches of government in order to obtain information that is available from other, more appropriate, sources. *See United States v. Morgan*, 313 U.S. 409, 422 (1941) ("[I]t was not the function of the court to

---

[4] Specifically, plaintiff states that a "forty-five minute" deposition at his own office will not hinder Schwartz's ability to perform the functions of his job. (Pl. Mem. Opp. Mot. Quash at 8.)  Although plaintiff's timetable is no doubt optimistic, plaintiff has represented to the Court that he has few issues to address and will use his best efforts to ensure that the deposition is conducted in as short a time as is practicable.

probe the mental processes of the Secretary [of Agriculture]. Just as a judge cannot be subjected to such a scrutiny . . . so the integrity of the administrative process must be equally respected. . . . It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other.") (citations omitted); *Capitol Vending Co. v. Baker*, 36 F.R.D. 45, 46 (D.D.C. 1964) ("If the head of a government agency were subject to having his deposition taken concerning any litigation affecting his agency or any litigation between private parties which may indirectly involve some activity of the agency, we would find that the heads of government departments and members of the President's Cabinet would be spending their time giving depositions and would have no opportunity to perform their functions."); *Wirtz v. Local 30, Int'l Union of Operating Eng'rs*, 34 F.R.D. 13, 14 (S.D.N.Y. 1963) ("It goes without saying that ours is a government of laws and not of men and that the Secretary of Labor is subject to the lawful orders of this Court, as is any private citizen. But at the same time common sense suggests that a member of the Cabinet and the administrative head of a large executive department should not be called upon personally to give testimony by deposition, either in New York or elsewhere, unless a clear showing is made that such a proceeding is essential to prevent prejudice or injustice to the party who would require it.").

In the present case, however, the sworn testimony presently before the Court indicates that Schwartz has particular and specialized knowledge of the events at issue. As previously stated, Berman's deposition testimony indicated that not only did Schwartz speak with him several times on the day that the article discussing the situation at SIUH was published, he advised Berman on "a whole range of options" regarding plaintiff's employment, including its termination. (Berman Dep.

7

at 41.) Surely, such statements merit further examination, particularly in light of plaintiff's assertion that the deposition will be brief and not require that Schwartz leave his own offices.

## CONCLUSION

For all of the foregoing reasons, the motion of non-party Westchester County Deputy County Executive Lawrence S. Schwartz to quash the subpoena of plaintiff Joseph Pisani is denied. The date for the deposition shall be set by agreement of the interested parties.

SO ORDERED.

Dated: White Plains, New York
       January 16, 2007

*William C. Conner*
Sr. United States District Judge